

Tagged Opinion

**ORDERED in the Southern District of Florida on March 03, 2009.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                CASE NO.:08-12026-PGH

David J. Donovan,                     Chapter 7
          Debtor.
_____/

Kasey Klaas,                          ADV. NO.:08-01350-PGH
          Plaintiff,
v.

David J. Donovan,
          Defendant.
_____/


<u>**MEMORANDUM ORDER DENYING SONEET R. KAPILA'S MOTION TO INTERVENE**</u>

**THIS MATTER** came before the Court for hearing on January 13, 2009, upon Soneet R. Kapila's ("Movant") *Motion to Intervene* ("Motion") filed on November 26, 2008. The Motion seeks permissive intervention and to substitute in the above-referenced adversary

proceeding to assert claims under § 523 and § 727.

## UNDISPUTED FACTS

Medium21, LLC ("Medium21") consisted of three members: David J. Donovan (the "Defendant"), Kasey Klaas (the "Plaintiff") and Jamie Ashe.  The Defendant and Medium21 filed Chapter 7 bankruptcy petitions on February 22, 2008.  *In re Medium21, LLC*, No. 08-12028. In the Defendant's bankruptcy case, the deadline to file a complaint objecting to discharge or to determine dischargeability of certain debts was May 27, 2008 ("Deadline").[1]  On May 22, 2008, the Plaintiff initiated the above-referenced adversary proceeding alleging claims under § 523 and § 727.  However, Medium21 and Movant failed to file a complaint by the May 27, 2008 Deadline. The Defendant's schedules listed neither Medium21 nor Movant as creditors.

In Medium21's bankruptcy case, Michael Bakst ("Mr. Bakst") was originally appointed trustee on February 22, 2008.  Mr. Bakst resigned on February 28, 2008 and Robert Furr ("Mr. Furr") was appointed successor trustee in Medium21's bankruptcy case.  Mr. Furr resigned on April 18, 2008 and Movant was appointed as successor trustee in Medium21's bankruptcy case.

---

[1]The *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* relating to the Defendant's bankruptcy case ("Notice") states that the deadline is May 27, 2008.  The Court notes that the Statement of Undisputed Facts indicates that the Deadline was May 26, 2008 and the parties referred to both dates in their briefs.  In order to resolve this inconsistency, the Court deems May 27, 2008 the correct date.

In the Defendant's bankruptcy case, on February 22, 2008, Mr. Bakst was also appointed trustee. On March 5, 2008, Mr. Bakst resigned as trustee in the Defendant's bankruptcy case and Deborah Menotte was appointed as successor trustee. Thus, Mr. Bakst was the trustee for both the Defendant's bankruptcy case and Medium21's bankruptcy case on February 27, 2008 when he was served with the Notice relating to Defendant's bankruptcy case and its attendant Deadlines.

Medium21's petition listed Defendant's bankruptcy case, the district in which the case was filed, the relationship between the Defendant and Medium21, and the judge presiding over the case in the section titled "Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor."

The meeting of creditors for Medium21's bankruptcy case was originally scheduled for March 27, 2008. However, due to Mr. Bakst and Mr. Furr's resignations and administrative complications, Medium21's meeting of creditors commenced on May 29, 2008 and concluded on June 11, 2008. The Defendant's bankruptcy case was discussed at Medium21's meeting of creditors on June 11, 2008.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

3

## I.   Intervention

Movant seeks to intervene as a plaintiff in the above-referenced adversary proceeding in order to assert claims under § 523 and § 727 by invoking Rule 24(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by virtue of Rule 7024 of the Federal Rules of Bankruptcy Procedure.  Rule 24(b) provides in pertinent part that "[o]n *timely* motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of fact or law."  Fed. R. Civ. P. 24(b)(emphasis added).

As discussed below, the Court finds that Movant's request is untimely and intervention is unwarranted.  Movant, having missed the May 27, 2008 Deadline to file a complaint objecting to discharge or to determine certain debt nondischargeable, may not circumvent that Deadline by intervening in this adversary proceeding.  In addition, Movant has failed to demonstrate that intervention is proper under the Eleventh Circuit's multi-factor timeliness test for permissive intervention. *See Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986).

### A.   Timeliness of Claims

Movant failed to file a complaint asserting § 523 and § 727 claims prior to the May 27, 2008 Deadline.  A movant is deemed to have "waived his right to [seek intervention] by failing to meet

4

the time deadlines as specified in Bankruptcy Rule 4007(c)." *Zoltanski v. Zyndorf (In re Zyndorf)*, 44 B.R. 77, 78 (Bankr. N.D. Ohio 1984); *Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 683 (Bankr. N.D.N.Y. 1990)("intervention, *per se*, is improper [where movant's] Application is brought well beyond the bar date for filing objections to discharge"). In *In re Zyndorf*, the court reasoned "[t]o allow the movant to raise this issue now would allow him to accomplish indirectly that which he can not do directly." 44 B.R. at 78. Movant argues that despite having missed the Deadline, the alleged § 523 claims are timely based upon § 523(a)(3)(B), § 108(a) and Bankruptcy Rule 4007(c). Movant also asserts that the § 727 claims are timely. The Court does not agree.

## 1. Section 523 Claims Are Untimely

Section 523 places a heavy burden on creditors to protect their rights. Generally under § 523, debt "is automatically discharged unless the creditor requests a determination of dischargeability." *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 460 (11th Cir. 1988)(*quoting Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987)). Under Rule 4007(c), a request for determination of dischargeability, or a motion to extend the time period to make such request must be made "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c); *In re Alton*, 837 F.2d at 459.

5

**a.   Section 523(a)(3)(B) Does Not Permit Creditor with Notice or Actual Knowledge to Bring § 523 Claims After Deadline.**

Section 523(a)(3)(B) is an exception to the general rule that debt is automatically discharged unless the creditor requests a determination of dischargeability.  It provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
> > (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
> >
> > > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargability of such debt under one of such paragraphs, ***unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.***

11 U.S.C. § 523(a)(3)(B)(emphasis added).

Section 523(a)(3)(B) preserves for certain omitted creditors, the right to litigate the dischargeability of certain debt after the expiration of the period within which scheduled creditors must file complaints.  *Regents of the Univ. of Cal. v. Paylan* (*In re Paylan)*, 390 B.R. 432, 437 (Bankr. M.D. Fla. 2008)(citations omitted).  "The primary purpose of this discharge exception is fairness to those creditors who, through no fault of their own, were somehow prejudiced by not having the opportunity to protect

6

their rights and assert their interests." *Id.* (*citing Manzanares v. State Farm Fire and Cas. Co. (In re Manzanares)*, 345 B.R. 773, 782 (Bankr. S.D. Fla. 2006)). However, "'mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who fails to file a claim before the bar date, whether or not that creditor received formal notice of the claims bar date.'" *Raines v. Brooker (In re Raines)*, 183 B.R. 299, 302 (Bankr. M.D. Fla. 1995)(*quoting Ford Bus. Forms, Inc. v. Sure Card, Inc.*, 180 B.R. 294, 296 (S.D. Fla. 1994)). Therefore, "'debt is not automatically discharged if the debtor fails to schedule the creditor *and* the creditor had no notice or *actual knowledge* of the case in time to file a claim and a request for determination of dischargeability.'" *In re Alton*, 837 F.2d at 460 (q*uoting Neeley*, 815 F.2d at 347)(emphasis in original)).

It is undisputed that Movant and Medium21 were neither listed nor scheduled in Defendant's bankruptcy case. It is likewise undisputed that the debt at issue is alleged to be of the kind specified under paragraph (2), (4), or (6) of subsection 523(a) and thus falls within the purview of § 523(a)(3)(B). Therefore, the determinative issue is whether Medium21 received notice or actual knowledge of the Defendant's bankruptcy case in time to file a timely complaint to determine dischargeability of the debt.

Notice and actual knowledge are constitutionally effective if "adequate 'to apprise [him] of the pendency of the action and

7

afford [him] an opportunity to present [his] objections.'" *Id.* at 461 (alterations in original)(*quoting Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950)).  Notice or actual knowledge will be imputed to a creditor when it "'comes to someone who has clear authority to act for the creditor and which provides ample opportunity (for the creditor) to participate in the bankruptcy proceeding . . . .'"  *In re Robertson*, 13 B.R. 726, 733 (Bankr. E.D. Va. 1981)(alteration in original)(*quoting Katz v. Kowalsky*, 296 Mich. 164 (1941)); *Lompa v. Price (In re Price)*, 79 B.R. 888, 890 (B.A.P. 9th Cir. 1987).  For example, "[w]here the attorney representing the creditor in enforcing a claim against the debtor receives knowledge of the bankruptcy case, the creditor will be deemed to have actual knowledge." *Grossie v. Sam (In re Sam)*, 94 B.R. 893, 897 (Bankr. W.D. La. 1988)(citations omitted) (concluding that dismissal of complaint was warranted where creditor's attorney received notice of bankruptcy case approximately 18 or 19 days prior to bar date); *Herndon v. De La Cruz* (*In re De La Cruz)*, 176 B.R. 19, 23 (B.A.P. 9th Cir. 1994)(concluding creditor had actual knowledge despite creditor's attorney's testimony that he did not receive the written notice sent to him).

Just as an attorney is the legal representative of his or her client, a trustee is the legal representative of the bankruptcy estate, possessing the capacity to sue.  11 U.S.C. § 323; *Stoll v. Quintanar (In re Stoll)*, 252 B.R. 492, 495 (B.A.P. 9th Cir.

2000)(*citing United States Trustee v. Joseph (In re Joseph)*, 208
B.R. 55, 60 (B.A.P. 9th Cir. 1997)).  In fact "[o]nly a trustee may
pursue a cause of action belonging to the bankruptcy estate." *Id.*
(citations omitted). The trustee appointed to Medium21's bankruptcy
case has authority to act for Medium21's bankruptcy estate.
Consequently, if Medium21's trustee receives notice or actual
knowledge of the Defendant's bankruptcy case with ample time to
participate in the proceeding, such notice or actual knowledge is
imputed to Medium21.

The Court determines that Mr. Bakst, as trustee for Medium21's
bankruptcy case, received both notice and actual knowledge of the
Defendant's bankruptcy case.  As to notice, according to the
certificate of service, Mr. Bakst was served with the Notice on
February 27, 2008, three months prior to the Deadline.  Thus, the
Court concludes that Mr. Bakst received formal notice of the
Defendant's bankruptcy case and its Deadlines with ample time to
participate in the proceeding on behalf of Medium21.  Consequently,
the Court finds that the notice received by Mr. Bakst is properly
imputed to Medium21.

As to actual knowledge, it is uncontested that Medium21's
bankruptcy petition listed the Defendant's bankruptcy case, the
district in which the case was filed, the relationship between the
Defendant and Medium21, and the judge presiding over the case.  It
is likewise uncontested that Mr. Bakst received Medium21's

9

bankruptcy petition upon his appointment as the trustee for Medium21's bankruptcy case on February 22, 2008, approximately three months before the Deadline in Defendant's bankruptcy case. The information contained in Medium21's petition was adequate to apprise Mr. Bakst of the pendency of the Defendant's action and afford ample opportunity to request a determination of dischargeability on behalf of Medium21. Moreover, Mr. Bakst was the Defendant's initial trustee and thus had actual knowledge of the Defendant's bankruptcy case. Consequently, the Court finds that the actual knowledge obtained by Mr. Bakst is appropriately imputed to Medium21.

Movant appears to suggest that because he did not receive notice or actual knowledge, Medium21 did not receive notice or actual knowledge. The Movant, however, is mistaken. Once the notice and actual knowledge received by Mr. Bakst is imputed to Medium21, Medium21 continues to possess such notice and actual knowledge regardless of Mr. Bakst's resignation. The appointment of a new trustee does not negate the notice and actual knowledge imputed to Medium21 through Mr. Bakst. Appointment of a new trustee does not require new notice or actual knowledge of any subsequently appointed trustee.[2]

---

[2] Movant's remark in its memorandum that, in the reality of bankruptcy practice, the appointed trustee does not review the bankruptcy petition until one or two weeks prior to the meeting of creditors is of no consequence. When Movant was appointed, Medium21's meeting of creditors was rescheduled to May 29, 2008, two days after the Deadline. Therefore, had Movant reviewed Medium21's petition one or two weeks prior to Medium21's meeting of creditors, Movant would still have had approximately five to twelve days to file a § 523 complaint or a motion for extension of time to file such complaint.

The Court therefore concludes that Medium21 received notice and had actual knowledge of the Defendant's bankruptcy case approximately three months prior to the Deadline. Because Medium21 had notice and actual knowledge of the Defendant's bankruptcy case in time to file a timely complaint, Movant and Medium21 cannot intervene to pursue their untimely § 523 claims under § 523(a)(3)(B).

### b. Thirty Day Notice Provision under Rule 4007(c) Does Not Apply to Creditor with Notice or Actual Knowledge Thirty Days Prior to Deadline

Rule 4007(c), which implements the deadline for § 523, states:

> Except as provided in subdivision (d), a complaint to determine the dischargeability of debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c).[3]

---

[3] Relying on *First Deposit Nat'l Bank v. Glover*, the Defendant asserts that because the deadline to file a complaint to determine dischargeability of debt is jurisdictional, the Court no longer has jurisdiction to entertain the Motion. *In re Glover,* 212 B.R. 860 (Bankr. S.D. Ohio 1997). The Court disagrees. *In re Glover* is at odds with a subsequent Supreme Court decision, *Kontrick v. Ryan*, which held that Rule 4004 is not jurisdictional. 124 S. Ct. 906, 910 (Jan. 14, 2004). The Supreme Court noted the similarity between Rules 4007(c) and 4004(a), and further stated that "[u]nder Bankruptcy Rule 4007(c), essentially the same time prescriptions apply to complaints targeting the discharge of a particular debt pursuant to 11 U.S.C. § 523(c)." *Id.* at 911 n.3. Moreover, recent case law holds that Rule 4007(c) is not jurisdictional. *See, e.g., U.S. v. Horras (In re Horras)*, 2009 WL 242526, *4 (Bankr. S.D. Iowa Jan. 30, 2009); *Ross v. Camus (In re Camus)*, 386 B.R. 396, 397 (Bankr. D. Conn. 2008); *Tomblin v. Robbins (In re Robbins)*, 2007 WL

Movant urges the Court to interpret Rule 4007 to require that all creditors, even those with actual knowledge of a debtor's bankruptcy case, receive not less than thirty days notice of the deadline. Relying on *Shaheen v. Penrose*, Movant contends that where a creditor does not receive thirty days notice pursuant to Rule 4007(c), the deadline to file a complaint will not pass, and the creditor will not be charged with actual knowledge under § 523(a)(3)(B). *In re Shaheen*, 174 B.R. 424 (E.D. Va. 1994). The Court does not find *In re Shaheen* to support Movant's position.

Unlike Meduim21, the creditor in *In re Shaheen* had no actual knowledge of the debtor's bankruptcy case.[4] In *In re Shaheen*, the debtor amended his schedules to add the previously omitted creditor, thereby causing the creditor to receive formal notice of the debtor's bankruptcy case twelve days prior to the bar date. *Id.* at 425. The *Shaheen* court held that the thirty day provision of Rule 4007(c) applies to later scheduled creditors who receive notice less than thirty days before the bar date for filing complaints. *Id.* at 427. Therefore, *In re Shaheen* is inapposite because Medium21 received formal notice and had actual knowledge of the Defendant's bankruptcy case more than thirty days prior to the Deadline.

---

1174334, *5 (Bankr. E.D. Tenn. April 19, 2007); *In re Sieger*, 360 B.R. 653, 656 (Bankr. N.D. Ohio 2007).

[4] The *Shaheen* court noted that "[t]he bankruptcy court made a finding of fact that [the creditor] had no actual knowledge of Debtor's bankruptcy filing before Debtor filed his amended schedules . . . . This finding of fact is suggested by the record and is not clearly erroneous." *Id.* at 425 n.1.

Moreover, the Eleventh Circuit has stated that "[a] holding that the language in Rule 4007(c) about notice gives a creditor the right to such official notice before he is under a duty to make inquiries to protect his own rights would conflict with the language of 11 U.S.C. § 523, which makes actual notice sufficient to impose a duty-to-inquire on the creditor." *Alton*, 837 F.2d at 460; *Durham Ritz, Inc. v. Williamson (In re Williamson*), 15 F.3d 1037, 1039 (11th Cir. 1994)("[t]he sixty day deadline applies regardless of the thirty day notice if the creditor has actual notice of a bankruptcy proceeding and sufficient time to file a dischargeability complaint.") Given the facts of this matter, Movant's position is unavailing because Medium21 had notice and actual knowledge of the Defendant's bankruptcy case approximately three months prior to the Deadline.

### c.    Section 108(a) Does Not Extend the May 27, 2008 Deadline

Section 108(a) provides special time limitations for the trustee to take actions that the debtor could have taken under nonbankruptcy law and generally gives the trustee at least two years from the date of the order for relief to commence an action

the debtor could have brought on the petition date.[5]  2 COLLIER ON BANKRUPTCY § 108.01 (15th ed. 2005).

At the hearing on the Motion, relying on *Waugh v. IRS*, Movant contended that § 108(a) should apply to the Deadline thereby providing the trustee with a two year extension of time to file a complaint under § 523.  *In re Waugh* 109 F.3d 489 (8th Cir. 1997). In *In re Waugh*, the debtor filed for bankruptcy once in 1988, in which his Chapter 11 plan was ultimately revoked in 1991, and then again in 1991 under Chapter 7, in which he received his discharge approximately four months thereafter.  *Id.* at 490.  The debtor had outstanding tax liabilities from 1987 owed to the Internal Revenue Service ("IRS").  *Id.* The debtor asserted that his 1987 tax liability should have been discharged in his Chapter 7 bankruptcy proceeding because the applicable three year look back period under § 507(a)(8)(A)(i) was not suspended during the bankruptcy cases. *Id.* at 490-91.  The *Waugh* court held that § 108(c), and § 6503(b) and (h) operated to suspend the three year look back period under § 507(a)(8)(A)(I) during the pendency of the bankruptcy proceedings.  *Id.* at 493.  While noting that the plain meaning of

---

[5] 11 U.S.C. § 108(a) provides:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of -

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

§ 108(c) indicates that it only applies to "nonbankruptcy law," the *Waugh* court determined the situation to be a rare case where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Id.* at 492-93 (citations omitted). The *Waugh* court reasoned that if the plain meaning of § 108(c) were applied, Congress' intent to afford the IRS a three year look back period for the collection of taxes would be frustrated. *Id.* at 493.

Movant avers that because § 108(c) and § 108(a) contain identical language - "nonbankruptcy law" - the reasoning in *In re Waugh* supports the proposition that § 108(a) may apply to bankruptcy claims as well as nonbankruptcy claims. Specifically, Movant contends that § 108(a) applies to § 523 claims. The Court does not agree. First, the Supreme Court's decision in *Young v. United States* calls into question the *Waugh* court's holding. 535 U.S. 43 (2002). In *Young*, the Supreme Court determined that the time period under § 507(a)(8)(A)(i) is equitably tolled during the period the automatic stay precludes the IRS from collecting its debt in a prior bankruptcy case, and thus declined to decide whether § 108(c) tolled the time period under § 507(a)(8)(A)(i). *Id.* at 47. Second, *In re Waugh* involved a debtor that filed successive bankruptcy petitions, causing an action by a creditor to be stayed while the priority period ran. Medium21's action was not precluded by the automatic stay while the Rule 4007(c) deadline

15

ran.    Applying § 108(a) to § 523(c) would frustrate Congress'
intent expressed by Rule 4007(c) that a clear deadline apply to
§ 523 claims.  Consequently, this Court finds § 108(a) inapplicable
to extend the deadline to file § 523 claims.

### 2.    Section 727 Claims Are Untimely

Movant also seeks intervention to assert claims objecting to
the Defendant's discharge under § 727. The time to file a complaint
objecting to a debtor's discharge is set forth in Rules 4004(a) and
(b), and 9006(b)(3) of the Federal Rules of Bankruptcy Procedure.
*Kontrick*, 124 S. Ct. 906, 911. Rule 4004(a) states in relevant
part: "In a chapter 7 liquidation case a complaint objecting to the
debtor's discharge under § 727(a) of the Code shall be filed no
later than 60 days after the first date set for the meeting of
creditors under § 341(a)." Fed. R. Bankr. P. 4004(a).  Any motion
to extend the time to file a complaint objecting to discharge
"shall be filed before the time has expired." Fed. R. Bankr. P.
4004(b).  Rule 9006(b)(3) permits the Court to enlarge the time for
filing complaints under Rule 4004(a) "only to the extent and under
the conditions stated in those rules." Fed. R. Bankr. P.
9006(b)(3).  Consequently, Rule 9006(b)(1)'s excusable neglect
standard is inapplicable to untimely objections to discharge.

These rules indicate a measured determination that the
benefits of a clear deadline, which advances the policy of the

"fresh start" for the debtor, outweighs the hardship creditors encounter when faced with a strict deadline. *In re Klein*, 64 B.R. 372, 375 (Bankr. E.D.N.Y. 1986). In this case, Movant failed to file a complaint objecting to the Debtor's discharge prior to the Deadline. Consequently, Movant's objections to the Defendant's discharge under § 727 are untimely.

**B.  Multi-Factor Rule 24 Timeliness Test**

The Eleventh Circuit has articulated the following four factors a court must consider when assessing the timeliness of a motion for permissive intervention:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that application is timely.

*Howard*, 782 F.2d at 959. For the reasons stated below, the Court finds that Movant's request for intervention is untimely and unwarranted under this test.

As to the first factor, Medium21 did not seek to intervene in the adversary proceeding until November 26, 2008, approximately nine months after it learned of its interest in the Defendant's case. This length of time is particularly troublesome in light of

17

the sixty day deadline set forth under Rules 4007(c) and 4004(a). Consequently, the time during which Medium21 knew of its interest in the Defendant's case and the time it petitioned for leave to intervene is great and weighs against a finding of timeliness.

As to the second factor, Medium21's failure to seek intervention when it learned of its interest in the Defendant's case in February 2008 is unfairly prejudicial to the Defendant. It is well understood that "[f]undamental to our insolvency laws is the notion that bankruptcy in the life of an individual is a passing phenomenon, after which life must go on. The viability and rapidity of that process is the essence of the discharge in bankruptcy and related fresh start doctrine." *H.T. Paul Co., Inc. v. Atteberry (In re Atteberry)*, 194 B.R. 521, 525 (D. Kan. 1996). Requiring the Defendant to defend against a new plaintiff, asserting new claims, at this stage of his bankruptcy case is contrary to the these fundamental notions. Moreover, any delay caused by the addition of new claims or additional discovery would prejudice the existing parties of the adversary proceeding, which has been pending before this Court for nearly nine months and is scheduled for pretrial on May 12, 2009. Thus, this factor also weights against a finding of timeliness.

The third factor measures the prejudice to Medium21 if the Motion is denied. The Motion states that Medium21's objectives are similar to the Plaintiff's and no evidence has been presented to

indicate that the Plaintiff is not actively representing his interests. If the Plaintiff succeeds on the § 727 claims, Medium21 will reap the same benefits because the Defendant's discharge will be denied. If, on the other hand, the Plaintiff seeks to abandon the § 727 claims, Medium21 may seek leave to substitute as discussed below. Hence, the prejudice against Medium21 if the Motion is denied is slight. As for the last factor, except for the circumstances previously discussed, the Court does not note any additional unusual circumstances that militate for or against determination that application is timely.

Therefore, under the multi-factor Rule 24 timeliness test set forth by the Eleventh Circuit in *Howard v. McLucas*, the Court finds that Movant's request for intervention is untimely and unwarranted.

## II.   Substitution

The purpose of substitution is to allow an adjudication on the merits of the original claim to proceed where the original plaintiff is unwilling to continue prosecution of the case. *Peterson-Marone Constr., LLC v. McKissack (In re McKissack)*, 320 B.R. 703, 720 (Bankr. D. Colo. 2005). Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by virtue of Rule 7041 of the Federal Rules of Bankruptcy Procedures, "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court

order, on terms that the court considers proper." Dismissal of a § 727 claim implicates certain policies thereby warranting heightened judicial oversight. For example, there is the concern that a quid pro quo dismissal of a complaint might result from a debtor promising or giving the plaintiff an advantage to induce dismissal, thus obtaining a discharge for consideration. *In re McKissack*, 320 B.R. at 718; *Ballard Furniture Co. v. Lindsey (In re Lindsey)*, 208 B.R. 169, 170 (Bankr. E.D. Ark. 1997). There is also the general policy that only an honest debtor receive bankruptcy relief. An objection to discharge furthers this policy because it is "directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engage in objectionable conduct that is of a magnitude and effect broader and more pervasive than fraud on, or injury to, a single creditor." *In re Joseph*, 121 B.R. at 682 (citation omitted); *McKissack*, 320 B.R. at 719.

Due to these various policy concerns, courts generally have permitted another party in interest to step into the shoes of the plaintiff moving to dismiss § 727 claims. *In re Joseph*, 121 B.R. at 683 (applying Rule 7025 to permit creditor to substitute for original plaintiff to prosecute complaint's objections to discharge); *SEC v. Bilzerian (In re Bilzerian)*, 1995 WL 934184, *4-5 (M.D. Fla. 1995)(concluding that Rule 7041 allows creditors to step into the shoes of the original creditor that abandons a § 727

action though limited to objections set forth in original complaint); *Jones v. Buzzeo (In re Buzzeo)*, 315 B.R. 243, 245-46 (Bankr. D. Conn. 2004)(concluding that under Rule 7041 the court may authorize creditors to continue § 727 action abandoned by original plaintiff); *In re DiLoreto*, 277 B.R. at 612 (Bankr. E. D. Pa. 2000)(noting that under Rule 7041 the court could allow another creditor to substitute as plaintiff where original plaintiff discontinues § 727 claims); *In re McKissack*, 320 B.R. at 719 (concluding that under § 105(a) the court may require substitution); *Ryan v. Thomas (In re Thomas)*, 178 B.R. 852, 853 (Bankr. W.D. Wash. 1995)(concluding that the trustee may substitute as successor in interest to the creditor).

Movant avers that it would have the right to substitute into the adversary proceeding should the Plaintiff abandon its claim under § 727. Movant thus reasons that it ought be added as a plaintiff because it may be substituted at a later date. Whether a party can be procedurally added as a plaintiff is unrelated to whether a creditor can be equitably substituted for an original plaintiff. Furthermore, because the purpose of substitution is to ensure adjudication of a claim when the original plaintiff abandons its claim, it does not serve as a basis to add a plaintiff.

While this Court concludes that substitution of a creditor for an original plaintiff that abandons § 727 claims may be appropriate as to the claims asserted in the original complaint, Movant's

request for substitution is premature.  The Movant may move to substitute if and when the Plaintiff abandons the § 727 claims.

### III. Movant's Additional Argument to be Added as a Party

Movant additionally asserts that it can be added as a party to the adversary proceeding under the framework established by the Rule 15 relation-back doctrine and Rule 21 provision addressing non-joinder of parties. Rule 21 states in part "[m]isjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  Rule 15(c) permits an amendment to relate back to the date of the original pleading when the amendment changes the party or the naming of the party against whom a claim is asserted if certain requirements are met.  Fed. R. Civ. P. 15(c). This provision is generally applied to permit the correction of technical pleading errors and occasionally applied to change the party against whom a claim is asserted.

However, the Court does not find Rule 15(c) applicable to this case because there is no pleading for which an amendment is sought. Rather, Movant is attempting to file its own Proposed Complaint. As for non-joinder under Rule 21, the Court, for the reasons stated above, does not find just terms to add Movant to this adversary proceeding.

22

## CONCLUSION

For the reasons stated above, Movant's Motion to Intervene is denied as untimely and unwarranted, Movant's request for substitution is denied as premature, and Movant cannot be added as a party.

## ORDER

The Court, having considered the evidence presented at the hearing, the arguments of counsel, the applicable law, the submissions of the parties, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1.    Movant's Motion to Intervene is **DENIED** as untimely and unwarranted.

2.    Movant's request for substitution is **DENIED** as premature.

### 

Copies furnished to:

Ivan J Reich, Esq.

Brett A. Elam, Esq.

Robert F. Reynolds

Brett A. Elam, Esq. is directed to mail a conformed copy of this judgment to all interested parties not listed above.

AUST